FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2020 JAN 23 PM 12: 33

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

AMADOU WANE
*Plaintiff,*

vs.

CASE NO: 8:2020 cv 171 oz cpT

SOKONA DIALLO,
LADY MIND HOOKAH,
PIMAP LLC,
*Defendants.*

## COMPLAINT

Plaintiff, AMADOU WANE (hereinafter "Plaintiff" or "WANE"), hereby sues Defendants SOKONA DIALLO, a resident of Houston, Texas ("Defendant" or "DIALLO"), PIMAP LLC ("PIMAP"), a Texas limited liability company, LADY MIND HOOKAH ("LMH"), a bar/nightclub owned by DIALLO. In support thereof, Plaintiff states as follows:

## INTRODUCTION

1. In August 2017 Plaintiff and Diallo entered into a business partnership that consists of exporting iron ore mineral from Mali (West Africa) to the United States and China.

2. Plaintiff brought into the partnership over Three Hundred Thousand Dollars ($300,000) as seed money to start the business and his personal credit in obtaining a business loan for Two Million Dollars ($2,000,000).



PLAINTIFF'S ORIGINAL COMPLAINT –Page 1

3. Diallo brought into the partnership her contacts within the iron ore mining industry in Mali.

4. In an elaborate scheme, Diallo stole money from Plaintiff and the partnership to buy and remodel a hookah bar/nightclub in Houston, purchase Ninety Thousand Dollars ($90,000) new Mercedes Benz, buy luxury goods, rent an exclusive apartment in downtown Houston[1] and pay for her plastic surgeries (buttock augmentation, facelift, and liposuction of inner thighs and arms ).

5. Further, once some payments for the business were received, Diallo endorsed the checks by forging Plaintiff's signature and deposited them into the business account of PIMAP.

6. Diallo then removed Plaintiff from the joint business account, cut all contacts with Plaintiff and changed her phone number.

## GENERAL ALLEGATIONS

### THE PARTIES & NON-PARTIES

7. Plaintiff AMADOU WANE is an individual residing in Hillsborough County, Florida.

8. Defendant SOKONA DIALLO, an individual is, on information and belief, domiciled at 5280 Caroline Street APT 2203, Houston, TX 77004-5887. She also maintains a second residence at 2525 Citywest Boulevard Apt. 233 Houston TX 77042.

9. Defendant PIMAP LLC is a limited liability company organized under the laws of Texas, with SOKONA DIALLO as sole member.

---

[1] Monthly rents go as high as $12,000

10. Defendant LADY MIND HOOKAH is a bar and nightclub owned by Diallo and located at 9366 Richmond Avenue, Houston, Texas 77063.

11. Non-Partie, Unknown Broker ("Broker") on information and belief, is a Texas company based in Houston who helped broker the sale contract. The true name of the Broker is unknown to Plaintiff at this time.

12. Non-Partie, Unknown Buyer ("Buyer") on information and belief, is a Chinese steel mill company the true name of which is unknown to Plaintiff at this time.

13. Non-Partie, Damion Hammond ("Hammond") is a male individual living in Houston, Texas who actively aided and abetted Diallo in her scheme to defraud Plaintiff.

### Reservation to Name Additional Defendants

14. In addition to the entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiff, but respecting whom Plaintiff currently lacks specific facts to permit Plaintiff to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiff is not waiving its right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

16. This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Hillsborough County, within this jurisdiction.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

17. This is a civil action brought by Plaintiff against Defendants who, acting individually and acting in connection with others, both known and unknown, defrauded Plaintiff of more than Two Million Three Hundred Thousand Dollars ($2,300,000.00).

18. Diallo stole Plaintiff's money and loan proceeds obtained with Plaintiff name and credit.

19. About 2 years ago Diallo arrived in the United States with nothing but a business idea. She had an iron ore mining license from Mali and was looking for partners in extracting and exporting the iron ore.

20. Diallo did not know where to start and asked Plaintiff for help. After some searching, Plaintiff gave her some leads. Few weeks later, Diallo realized how difficult it will be to secure funding.

21. Diallo is undocumented with a pending immigration deportation order[2] and no income. She is currently out on bail under ICE[3]'s Intensive Supervision Appearance Program (ISAP). That's why she approached Plaintiff with a partnership proposal.

22. Plaintiff agreed to provide seed money to put the business in place.

23. Due to her immigration status, all the contracts in the US will be in Plaintiff name. The ownership of PIMAP was to be transferred to Plaintiff.

---

[2] Deportation order currently on appeal
[3] Immigration and Customs Enforcement

24. On March 29, 2018 Diallo requested Ten Thousand Dollars ($10,000) as legal fee to amend PIMAP and add Plaintiff's as a member of the LLC. She received the money but never give Plaintiff a copy of the amended LLC.

25. According to the Texas Secretary of State record, Diallo is still the sole member of PIMAP.

26. The sale contract with the iron ore buyer ("Buyer") was also to be put in Plaintiff's name.

27. Since the beginning, Diallo refused to disclose the identity of the Buyer and refused to give Plaintiff a copy of the sale contract.

28. Diallo went to great lengths to hide from Plaintiff the true identity of the Broker and the Buyer; the less Plaintiff knows, the easier she thought she could remove him entirely from the deal.

29. Diallo acted in bad faith and did not have any intention to fulfil her side of the bargain; she wanted her proverbial cake, and eat it too.

30. On March 19, 2018, Plaintiff sent a text message to Diallo to voice his concern on the lack of formal partnership agreement. Plaintiff wanted to ensure that there was no ambiguity as to the partnership.

31. Diallo confirmed to Plaintiff that they were equal partners and there was no need to worry.

32. With this reassurance, Plaintiff gave Diallo over Sixty-five Thousand Dollars ($65,000) for two shipments of iron ore to the port of Houston.

33. Despite repeated requests, Diallo has not provided any documents, invoices, receipts concerning the shipments.

34. Diallo did not provide any information as to whom the product was sold to, nor did she provide any accounting of payment received.

### Fictitious Person: Katie

35. To cover her tracks, Diallo created a fictitious person named Katie, Secretary of a company that bought the iron ore.

36. Diallo used a cell phone number[4] to impersonate Katie.

37. Diallo misled Plaintiff via Katie. One time Katie claimed that their office building caught fire, another time she would say that the check was mailed but came back.

38. The deception went on for several months.

### Fictitious Person: John Sorge

39. Diallo continued to defraud and misled Plaintiff by inventing yet another fictitious person named John Sorge. She used a different cell phone number[5] for that scheme.

40. In the evening of September 13, 2018, Sorge contacted Plaintiff via a text message.

> Sorge: Hello Mr Wane I am John Sorge the General Manager of Santiago and landscapes Mining.When it's the best time tomorrow to text you so we can discuss little since you are the new owner of PIMAP
> Thank you and sorry for the time of the message

41. Sorge asked Plaintiff to fill out a loan application from Johnson Advisory Group Inc. in the amount of TWO MILLION DOLLARS.

> Sorge: We contact our big client so we will send you an application now fill up and send back to me now so they can process 2M for us your company and mine so we can start to work on the deal has agree

---

[4] (832) 378-9813
[5] (281)862-8588)

42. According to Sorge, Plaintiff loan application was approved.

> Sorge: Congratulations you have been approved

43. On June 2, 2019, Plaintiff sent a notarized letter authorizing Diallo to receive the loan checks and mail them to him via Fedex.

44. However, Diallo was not authorized to endorse and deposit any check on behalf of Plaintiff.

## Fictitious Port Storage Lease

45. Diallo lied to Plaintiff about the need to lease a storage near the port of Houston.

46. Plaintiff gave her over Fifty Thousand Dollars ($50,000) for initial deposit and monthly payments for the storage.

47. Even though Plaintiff insisted on receiving receipts of all transactions, Diallo never complied. She always said "yes", but never delivered.

48. The storage lease never existed.

49. On April 11, 2019, Plaintiff renewed his demand via the following text message:

> 1) Provide copy of Brazos contract
> 2) Provide copy of port storage contract
> 3) Provide copy of sale contract of iron ore
> 4) Provide copy of mineral insurance from Alliance or contact person in Mali
> 5) Provide receipt of Texas sale tax payment

50. There was never a storage lease. It was Diallo's fabrication: another scheme to steal money from Plaintiff.

## Fake Hospitalization

51. Starting early August 2019, Diallo stopped taking Plaintiff calls and disappeared.

52. For months, Plaintiff looked for Diallo. Plaintiff contacted her friends and family without success.

53. With the help of an acquaintance named Hammond, Diallo concocted a fake illness and hospital stay in Miami.

54. From August 2019, to January 2020, Hammond texted Plaintiff from a Miami phone number[6]. He claimed that Diallo was seriously ill and could not talk.

55. Hammond was never able to provide the name of the hospital where Diallo was purportedly staying.

56. Early January 2020, Plaintiff sent an email to Diallo threatening legal action if she doesn't come clean.

57. Few minutes later, Diallo contacted Plaintiff via a new phone number. She insisted on her fake hospital stay. However, she could not provide the name of the hospital where she said she was staying.

58. On January 11, 2019, Plaintiff contacted Bank of America, and was informed that his name has been removed from PIMAP business account.

59. It became clear that Diallo stole money from Plaintiff to finance the acquisition of LMH nightclub in Houston and remove him from the iron ore export deal.

---

[6] (305) 340-0994

60. To enforce its rights, Plaintiff may retain a counsel and will be obligated to pay counsel a reasonable fee for his services, for which Defendants are liable as a result of their bad faith and otherwise.

## FIRST CAUSE OF ACTION

**TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

61. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-60 above, and further alleges:

62. At all relevant times, Diallo, and PIMAP knew that Plaintiff, as a partner, is part of the sale contract with the Buyer.

63. Plaintiff is informed and believes and thereon alleges that, in an effort to interfere with his right under the sale contract, Diallo hid the identity of the Buyer from him by refusing to provide a copy of the contract.

64. By intentionally keeping Plaintiff in the dark, Diallo hoped to eliminate him from the deal and collect all the benefits from the contract.

65. As a proximate result of the conduct of Defendants Diallo, and PIMAP as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

66. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

**BREACH OF CONTRACT AND COVENANT OF GOOD FAITH AND FAIR DEALING**

67. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-60 above, and further alleges:

68. At all times relevant to this litigation, Defendants Diallo, and PIMAP were in a contractual relationship with Plaintiff and owed a duty to Plaintiff to act in good faith and deal fairly with him.

69. Defendants breached that duty on more than one occasion by wrongfully converting, taking, utilizing or managing property and financial interests of Plaintiff.

70. Such acts and omissions leading to the Defendants' breach of her duty to deal in good faith and fairly with Plaintiff were the actual and proximate cause of harm to Plaintiff.

71. As a proximate result of the conduct of Defendants as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

72. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

73. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-60 above, and further alleges:

74. The Diallo made false representations of material fact about the amendment to PIMAP, the existence of a storage lease, the loan and the contract amongst other things.

75. Diallo knew she was lying to Plaintiff.

76. Diallo intended for the Plaintiff to rely on her false statements.

77. Plaintiff justifiably relied on the false statements; he trusted her as a partner and gave her the money she asked for.

78. Plaintiff suffered damages due to his reliance on Diallo's false statements.

79. As a proximate result of the conduct of Defendants Diallo, and PIMAP as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

80. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise

causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

81. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-60 above, and further alleges:

82. At all times relevant to this litigation, Defendants Diallo and PIMAP owed a legal duty to Plaintiff to not unfairly or unduly take advantage of Plaintiff or commit wrongful acts in order to unjustly enrich themselves at Plaintiff's expense or at the expense of Plaintiff's property or financial interests.

83. During the period from approximately June 7, 2017 to December 16, 2019, Defendants Diallo, and PIMAP unjustly enriched themselves by wrongfully converting, taking, utilizing or managing the property and financial interests of Plaintiff.

84. Such acts and omissions leading to the Defendants' unjust enrichment were the actual and proximate cause of harm to Plaintiff.

85. As a proximate result of the conduct of Defendants as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

86. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

### CONVERSION

87. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-60 above, and further alleges:

88. At all times relevant to this litigation, Defendants Diallo and PIMAP owed Plaintiff a duty to not convert Plaintiff's property to Diallo's own use and benefit.

89. Defendants breached that duty on more than one occasion and such breaches were the actual and proximate cause of harm to Plaintiff.

90. As a proximate result of the conduct of Defendants as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

91. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves its right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Respectfully submitted, this 23 day of January 2020

/s/Amadou Wane
Amadou Wane
13046 Racetrack Rd. #118
Tampa, FL 33626
(813) 343-0438
amadou.wane@pimapllc.com